SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------x
EBONY S. JERIDO,

               Plaintiff(s),         **AMENDED**
                                            **VERIFIED COMPLAINT**

    -against-                Index No.801508/2021

UBER TECHNOLOGIES, INC,

               Defendant(s).
------------------------------------------x

      Plaintiff, EBONY S. JERIDO, by her attorneys, TROLMAN GLASER CORLEY & LICHTMAN, P.C., complaining of the defendants, all upon information and belief, respectfully alleges:

    1.    This action falls within one or more of the exceptions set forth in CPLR §1602.

    2.    That at all times herein mentioned the plaintiff was and still is a resident of the County of Bronx, City and State of New York.

    3.    That at all the times hereinafter mentioned the defendant, UBER TECHNOLOGIES INC., (hereinafter "UBER") was and still is a domestic limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

    4.    That at all the times hereinafter mentioned, UBER, was and still is authorized to conduct and is doing business in the State of New York.

5. That at all the times hereinafter mentioned, UBER, regularly conducts business in the State of New York and derives substantial revenue from services rendered in the State of New York.

6. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, owned a Transportation Network Company, which employed, hired and retained drivers (hereinafter "Drivers") to provide a number of transportation options and vehicles for users of their service, through an online-enabled application known as the UBER App.

7. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, managed a Transportation Network Company, which employed, hired and retained Drivers to provide a number of transportation options and vehicles for users of their service, through an online-enabled application known as the UBER App.

8. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, controlled a Transportation Network Company, which employed, hired and retained Drivers to provide a number of transportation options and vehicles for users of their service, through an online-enabled application known as the UBER App.

9. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, operated a Transportation Network Company, which employed, hired and retained drivers to provide a number of transportation options and vehicles for users of their service, through an online-enabled application known as the UBER App.

10. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, provided prearranged transportation services for compensation through use of the UBER App and other means to persons wanting to procure transportation with UBER Drivers who, utilizing their own personal vehicles, provide transportation in exchange for compensation.

11. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, solicited Drivers in the New York Metropolitan area through aggressive advertising on television, radio and other media.

12. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, fostered a culture of reckless and unsafe transportation services in the New York Metropolitan area by promises to its solicited Drivers of earning easy and fast compensation.

13. That at all the times hereinafter mentioned, and on

and before 1/2/2018, SHREE K. SYANGTAN, operated and controlled certain 2016 Nissan motor vehicle bearing New York State Registration No. T719607C for the year 2018. (hereinafter "Vehicle").

14. That at all the times hereinafter mentioned, and on and before 1/2/2018, SHREE K. SYANGTAN, operated and controlled certain 2016 Nissan motor vehicle bearing New York State Registration No. T719607C for the year 2018.

15. That at all the times hereinafter mentioned, and before 1/2/2018, SHREE K. SYANGTAN was an UBER Driver.

16. That at all times herein mentioned, and on and before 1/2/2018, in order to become an UBER Driver, SHREE K. SYANGTAN was required by UBER to log onto UBER's web-based portal and provide information including, but not limited to, name, telephone number, address, email, banking information, vehicle registration, insurance, vehicle description and have his vehicle inspected.

17. That at all times herein mentioned, and on and before 1/2/2018, UBER was a distributor of an online enable application knowns as UBER App.

18. That at all times herein mentioned, and on and before 1/2/2018, UBER trained its drivers, with online instructions

videos and maintained minimum standards for its Drivers, in order for them to further UBER's business.

19. That at all times herein mentioned, and on and before 1/2/2018, UBER set the rates that customers pay for their trips, and collects the fares from the customer.

20. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER maintained control over the entire transaction between an UBER customer and/or its UBER Drivers.

21. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER paid and continue to pay UBER Drivers on a weekly basis.

22. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER issued into the stream of commerce the UBER App, which application was installed on SHREE K. SYANGTAN electronic device and used by SHREE K. SYANGTAN in his vehicle.

23. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER INC., completely controlled the use of the UBER App by its Drivers and customers.

24. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER's brand and value to customers is increased by having a significant number of its Drivers, registered and visible to Customers on the UBER App and through

the UBER window sticker, thereby increasing the demand for UBER Drivers.

25. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER permitted and authorized its Drivers, to communicate with Customers by text and phone through use of its UBER App.

26. That at all the times hereinafter mentioned, and on and before 1/2/2018, the transportation services provided to the public by UBER Drivers, were an integral and essential part of UBER's regular business operations.

27. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER's business would not exist without the furnishing of transportation services by its Drivers.

28. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER Drivers, were economically dependent on UBER, INC.

29. That at all the times hereinafter mentioned, and on and before 1/2/2018, the UBER App used by UBER Drivers, required said Drivers to monitor their wireless communication devices, smartphone/GPS both visually and tactilely, in order to render transportation services for UBER.

30. That at all the times hereinafter mentioned, and on

and before 1/2/2018, UBER's required use by its Drivers, of the UBER App, caused regular Driver inattention and distraction thereby creating unsafe and hazardous conditions on the public roadways.

31. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER's aggressive policy of promising its Drivers, of fast and generous compensation, caused regular Driver inattention, distraction and other unsafe vehicular operation by its Drivers, including UBER, INC., thereby causing unsafe and hazardous conditions on the public roadways of New York State and Brooklyn, County in particular.

32. That at all the times hereinafter mentioned, and on and before 1/2/2018, SHREE K. SYANGTAN, was an employee of UBER, duly authorized to operate his Vehicle by UBER.

33. That at all the times hereinafter mentioned, and on and before 1/2/2018 SHREE K. SYANGTAN was operating his vehicle in the course of the authority and scope of employment for UBER.

34. That at all the times hereinafter herein mentioned, and on and before 1/2/2018, SHREE K. SYANGTAN was operating his aforesaid Vehicle for the benefit of UBER TECHNOLOGIES and in furtherance of UBER's business.

35. That at all the times hereinafter mentioned, and on

the morning of 1/2/2018, SHREE K. SYANGTAN, began his work day for UBER, as he drove his Vehicle from and travelled the public roadways in the County of Brooklyn, County, City and State of New York.

36. That at all the times hereinafter mentioned, 160 East 153rd Street, in the County of Bronx, City and State of New York, were and still are public roadways and/or thoroughfare.

37. That all times herein mentioned, and on or about 1/2/2018, the defendant, SHREE K. SYANGTAN, drove, operated and controlled the aforesaid 2015 Toyota motor vehicle bearing New York State Registration No. T680198C, for the year 2016, along and upon the roadway of 160 East 153rd Street, in the County of Bronx, City and State of New York, when the said 2015 Toyota motor vehicle being operated by SHREE K. SYANGTAN was in contact with the plaintiff, EBONY S. JERIDO, a pedestrian.

38. That on 1/2/2018, SHREE K. SYANGTAN while operating aforesaid Vehicle in the scope of his employment, recklessly and carelessly lost control of his Vehicle on the aforesaid public roadway, striking EBONY S. JERIDO.

39. That by reason of the foregoing, EBONY S. JERIDO sustained multiple severe and permanent injuries, rendering her disabled, and causing her to require and still need extensive

8

and ongoing hospital, medical and rehabilitation care and attention, and to incur substantial hospital, medical and other expenses, and she was otherwise damaged.

40. That the aforesaid crash and resultant injuries to EBONY S. JERIDO were caused wholly and solely by the carelessness, recklessness and negligence of the defendants in the ownership, operation, maintenance and control of their aforesaid Vehicle and the carelessness and negligence of UBER, INC. in the supervision, management, direction and control of SHREE K. SYANGTAN in the carelessness and negligence of UBER, in facilitating the use of the UBER App by its Drivers, which the defendants knew, or should have known, created an unsafe and hazardous monitoring distraction for its Drivers; in recklessly operating said Vehicle such that SHREE K. SYANGTAN lost control of said Vehicle, injuring EBONY S. JERIDO.

41. That by reason of the foregoing the plaintiff, EBONY S. JERIDO has sustained serious injuries as defined in §5102(d) of the Insurance Law of the State of New York and/or economic loss greater than basic economic loss as defined in §5102(a) of the Insurance Law of the State of New York.

42. That this action falls within one or more of the exceptions set forth in CPLR §1602, to wit §1602(2)(iv)(6)(7).

43. That at all the times hereinafter mentioned, New York State Vehicle and Traffic Law §1225-d provides in part that "no person shall operate a motor vehicle while using any portable electronic device while such vehicle is in motion."

44. That at all the times hereinafter mentioned, New York State Vehicle and Traffic Law §1225-d(1-a) provides that "[n]o motor carrier shall allow or require its drivers to use portable electronic device while operating a commercial motor vehicle as provided in this section."

45. That at all the times hereinafter mentioned, under New York State Transportation Law § 2(17), the phrase "motor carrier' includes common and contract carriers of passengers by motor vehicle, common and contract carriers of property by motor vehicle, and common carriers of household goods by motor vehicle."

46. That at all the times hereinafter mentioned, under New York State Transportation Law, UBER, is a motor carrier.

47. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, knew, or should have known, that the use of the UBER App by UBER Drivers, would be violative of the aforementioned Sections of New York State Vehicle and Traffic Law.

10

48. That at all the time hereinafter mentioned, and on and before 1/2/2018, the aforementioned sections of the New York State Vehicle and Traffic Law were laws implemented by the State of New York to protect individuals from injury or death due to driver distraction or driver inattentiveness.

49. That at all the times hereinafter mentioned, and on 1/2/2018, EBONY S. JERIDO, belonged to a class of persons intended to be protected by these laws.

50. That on 1/2/2018, UBER, breached one or more duties established by §1225-d, and § 1225-d(l-a) of the New York State Vehicle and Traffic Law.

51. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, INC., designed and/or distributed the UBER App that UBER Drivers, were required to use.

52. That at all the times hereinafter mentioned, and on and before 1/2/2018, the UBER App maintained all functions even when the vehicle is in motion.

53. That at all the times hereinafter mentioned, and on and before 1/2/2018, the UBER App was designed to operate in contravention of New York State Vehicle and Traffic Law§ 1225-d, and§ 1225-d(l-a).

54. That at all the times hereinafter mentioned, and on

1/2/2018, SHREE K. SYANGTAN was using the UBER App at the time she recklessly and carelessly lost control of his Vehicle and struck EBONY S. JERIDO a pedestrian.

55. That at all the times hereinafter mentioned, and on 1/2/2018, SHREE K. SYANGTAN was using the UBER App at the time her vehicle struck EBONY S. JERIDO in a manner that was reasonably foreseeable to SHREE K. SYANGTAN.

56. That at all the times hereinafter mentioned, and on and before 1/2/2018, UBER, negligent and careless manufacturing, design, construction, marketing, sale and distribution of the UBER App was a substantial contributing cause of the aforesaid 1/2/2018, crash and the multiple severe and permanent injuries sustained by EBONY S. JERIDO.

57. That by reason of the foregoing, the plaintiff, EBONY S. JERIDO, became sick, sore and disabled; sustained grievous personal injuries to various parts of her body; suffered and will continue to suffer great pain and anguish in body and mind; received necessary hospital care and attention by reason of her injuries; that she has necessarily received, is receiving and will continue to receive necessary medical care by reason of the injuries sustained by her and in connection with which expenses have, are and will continue to be incurred; that she has been

greatly incapacitated and has been unable to attend to her usual duties as she had theretofore done, and, upon information and belief, her injuries are permanent, protracted and disabling in nature.

58. That the amount of damages sought by the plaintiff against the defendant, UBER TECHNOLOGIES, INC., for such amount as may seem just and proper, in accordance with the law and damages sustained by her, as will be determined upon the trial of this action, together with the costs and disbursements of this action.

59. That this action was commenced within the applicable statute of limitations, by virtue of the toll on statutes of limitations set forth in the Executive Order No. 202.8 of New York State by Governor Andrew Cuomo, dated March 7, 2020, and all subsequent executive orders referencing 202.8, with said toll having been extended to November 6, 2020.

Dated:   New York, NY
         May 17, 2021

_Jeffrey A. Lichtman_
JEFFREY A. LICHTMAN
Trolman Glaser Corley & Lichtman, P.C.
Attorney for Plaintiff(s)
Ebony S. Jerido
747 Third Avenue
23rd Floor
New York, NY 10017
(212)750-1200

13

## ATTORNEY VERIFICATION

JEFFREY A. LICHTMAN being an attorney duly licensed to practice law in the State of New York, attorneys of record for the plaintiff, hereby affirms the truth of the following statements, all under penalty of perjury:

That affirmant has read the foregoing **AMENDED VERIFIED COMPLAINT** and knows the contents thereof; that the same is true to affirmant's own knowledge except as to the matters therein stated to be alleged upon information and belief, this entire JEFFREY A. LICHTMAN, being based upon information and belief the source thereof being the investigation conducted and the file maintained in this office, and as to those matters affirmant believes it to be true; the reason that this verification is not made by plaintiff is that plaintiff does not reside in the county of New York wherein affirmant maintains an office.

Dated:  New York, New York
        May 17, 2021

                                        _____
                                        *Jeffrey A. Lichtman*
                                        JEFFREY A. LICHTMAN